**IT IS ORDERED as set forth below:**

**Date: September 26, 2024**



_____
**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>MEDCROSS IMAGING, LLC,<br><br>    Debtor. | CASE NO. 20-61522-BEM<br><br><br>CHAPTER 7 |
| JASON L. PETTIE, Chapter 7 Trustee for the Estate of Medcross Imaging, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MEDCROSS IMAGING, LLC et al.,<br><br>    Defendants. | <br><br><br><br>ADVERSARY PROCEEDING NO. 22-5013-BEM |

## **ORDER**

This matter came before the Court on January 11, 2024, for trial ("Trial") on Plaintiff's Amended Complaint to avoid certain transfers, for turnover of estate property, for

recovery of transfers, and for preservation of transfers. [Doc. 17]. On March 29, 2024, the Court entered a Memorandum Opinion finding some of the transfers to be avoidable and entered a Judgment consistent with the Opinion. [Docs. 95, 96]. In the Memorandum Opinion, the Court noted that Defendant Pankesh Kadam ("Kadam") filed a bankruptcy petition in this Court (Case No. 24-52121) on February 29, 2024, such that the Memorandum Opinion did not adjudicate Plaintiff's claims, if any, against Kadam as Plaintiff did not seek stay relief in Kadam's bankruptcy case to proceed against Kadam. [Doc. 95 at 3]. On June 12, 2024, Kadam's bankruptcy case was dismissed and subsequently closed on July 16, 2024. [Case No. 24-52121, Doc. 19]. Thus, Plaintiff's claims against Kadam are now ripe for review.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.[1]

I.      **Findings of Fact**

The Court hereby incorporates the findings of fact as set forth in the Memorandum Opinion and will not repeat those findings in full here. [Doc. 95 at 3-19]. Debtor is a limited liability company providing radiology services whose Class A shares previously were 100% owned by Defendant Honey Creek Diagnostics, LP ("Honey Creek").[2] Kadam is the 99% owner and general partner of Honey Creek with Amscan Radiology & Imaging Solutions, LLC ("Amscan") as the other partner holding the remaining 1% ownership interest. Amscan is wholly owned by Kadam.

---

[1] To the extent, if any, that the Findings of Fact as stated may be deemed Conclusions of Law, they shall be considered Conclusions of Law. Similarly, to the extent the matters expressed as Conclusions of Law may be deemed Findings of Fact, they shall be considered Findings of Fact.
[2] Class B shares are owned by a radiologist.

In the Memorandum Opinion, the Court found that transfers defined as the October 2017 Transfers[3] and the Johns' Creek Equipment Transfer are avoidable pursuant to 11 U.S.C. §§ 544 and 548 and that funds transferred to Honey Creek in connection with transfers defined as the ImageLink Transfer and the Allegiance Transfer (collectively, the "Avoided Transfers") are likewise avoidable pursuant to §§ 544 and 548.

The October 2017 Transfers consist of three transactions executed concurrently on October 4, 2017: the sale of equipment from Medcross to Honey Creek for $500,000 (the "Equipment Transfer"); the redemption of Honey Creek's interest in Medcross in exchange for $3.5 million, consisting of a $3 million demand note and an offset for the $500,000 owed by Medcross in the Equipment Transfer (the "Redemption Transfer"); and an agreement between Medcross and Honey Creek under which Honey Creek would provide management services to Medcross in exchange for 100% of Medcross's gross monthly receipts less expenses (the "Management Agreement"). Under the Management Agreement, Honey Creek had full management control of Medcross and was responsible for its day-to-day management. Kadam signed the contracts for the Equipment Transfer and the Redemption Transfer on behalf of both Medcross and Honey Creek. Kadam signed the Management Agreement on behalf of Honey Creek while Medcross's Class B member signed on behalf of Medcross. The Court found that the Redemption Transfer and the Equipment Transfer were undertaken with actual fraudulent intent to make Medcross judgment proof while Honey Creek recouped some of the money it had put into Medcross. [Doc. 95 at 29].

The Johns' Creek Equipment Transfer and the ImageLink Transfer consisted of two agreements entered into on May 1, 2018. First, Medcross purchased equipment from Honey Creek

---

[3] The Memorandum Opinion refers to these transfers as the October 2017 Transactions, the October 2017 Transfers, and the October 2017 Transaction Transfers.

3

in exchange for a $400,000 note. Second, Medcross sold that same equipment to third party ImageLink, LLC for $400,000; of that amount $375,000 went to Honey Creek and $25,000 went to Medcross. The Court found that the Johns' Creek Equipment Transfer was undertaken with fraudulent intent and only occurred so Medcross could sell the equipment to a third party, and therefore the $400,000 obligation to Honey Creek was avoidable. [Doc. 95 at 29-30]. The Court found that $375,000 of the ImageLink Transfer was avoidable as fraudulent because the obligation to Honey Creek in the Johns' Creek Equipment Transfer was avoided, such that the $375,000 paid to Honey Creek from the ImageLink Transfer was for less than reasonably equivalent value. [Id. at 30].

The Allegiance Transfer consisted of the sale of Medcross's Monroe location and outstanding accounts receivable to third party Allegiance Imaging and Radiology, LLC in exchange for the assumption of a $50,000 debt.[4] There was no record of Medcross receiving any cash proceeds from the Allegiance Transfer, and Medcross's available balance sheets did not show a $50,000 debt removed from its books.[5] Nevertheless, a transfer of $70,000 from Medcross to Honey Creek was attributable to the Allegiance Transfer, and Medcross received nothing in return. Therefore, the $70,000 paid to Honey Creek was avoidable as fraudulent. [Doc. 95 at 30].

With respect to recovery of the Avoided Transfers from Honey Creek, the Court ruled that the Redemption Transfer and the John's Creek Equipment Transfer both resulted in Medcross incurring an obligation to Honey Creek, such that there is nothing for Plaintiff to recover once that obligation is avoided. In the Equipment Transfer, Honey Creek received equipment worth at least $500,000, which is avoidable, and Plaintiff can recover the equipment or its value

---

[4] As set forth in the Memorandum Opinion, the actual consideration received by Medcross for the ImageLink Transfer and the Allegiance Transfer is difficult to ascertain.
[5] The Court found that the Allegiance Transfer may be avoidable but not in this proceeding because Allegiance is not a defendant.

4

from Honey Creek. In the ImageLink Transfer, Medcross received $400,000 and paid $375,000 of that to Honey Creek, which payment is avoidable and can be recovered from Honey Creek, but to the extent the value of the Equipment Transfer is attributable to the John's Creek Equipment, Plaintiff's recovery must be reduced to that extent. As a result of the Allegiance Transfer, Medcross transferred $70,000 to Honey Creek, which is avoidable and can be recovered from Honey Creek.

II.     **Conclusions of Law**

The Court notes that Plaintiff did not identify any specific claims against Kadam in either the Amended Complaint or the Pretrial Order. At the conclusion of evidence at the Trial, counsel for Kadam made a motion for a verdict as a matter of law in favor of Kadam, arguing that there was no evidence that he received any money personally or acted in his individual capacity to transfer anything. Counsel for Plaintiff argued that the pleadings should conform to the evidence and that Kadam had been acting through Honey Creek to advance his own interests, asserting Kadam's liability under an alter ego theory, which was a theory first advanced after the Trial. The Court will first consider whether the Avoided Transfers may be recovered from Kadam and then will consider the alter ego theory.

**A. Recovery of Avoided Transfers Under § 550**

Once the trustee has established that a transfer is avoidable, § 550 of the Bankruptcy Code provides for liability for the avoided transfer as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 … [or] 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

5

11 U.S.C. § 550(a). While the trustee may look to recover from the initial or subsequent transferees, it is "entitled to only a single satisfaction[.]" *Id.* § 550(d). Additionally, § 550(a) only provides for a recovery of transfers avoided, not for obligations that are avoided. *In re Int'l Supply Co.*, 631 B.R. 331, 339-40 (Bankr. C.D. Ill. 2021). "Avoidance of an obligation may benefit unsecured creditors by eliminating a claim that would otherwise dilute the distribution made to that class. Avoidance of an obligation may also benefit the estate by making transfers made by the debtor to the creditor of the avoided obligation, avoidable and recoverable from the creditor." *Id.*

In the Memorandum Opinion, the Court found the Avoided Transfers are avoidable under §§ 544 and 548 such that Plaintiff may recover the property or the value of the property from the initial or subsequent transferees. [Docs. 95, 96]. To recover from Kadam, Plaintiff must show that value was transferred to Kadam as the initial transferee or as an immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a).

The Bankruptcy Code does not define "transferee"; however, the Eleventh Circuit has adopted a control or conduit test whereby "a recipient of an avoidable transfer is an initial transferee only if they exercise legal control over the assets received, such that they have the right to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of the debtor-transferor or the real initial transferee." *In re Harwell*, 628 F.3d 1312, 1321 (11th Cir. 2010) (quoting *Andreini & Co. v. Pony Express Delivery Servs., Inc.* (*In re Pony Express Delivery Servs., Inc.*), 440 F.3d 1296 (11th Cir. 2006)). "Equitable considerations play a major role in the mere conduit or control test because it would be inequitable to hold an initial recipient of the debtor's fraudulently-transferred funds liable where that recipient could not ascertain the transferor debtor's solvency, lacked any control over the funds, or lacked knowledge of the source of the funds." *Id.* at 1322. The immediate transferee is "one who receives

6

a transfer from the initial transferee and all other recipients are mediate transferees." *Janet G. Watts v. MTC Development LLC, et al.* (*In re Palisades at W. Paces Imaging Ctr., LLC*), 501 B.R. 896, 916 (Bankr. N.D. Ga. 2013) (Hagenau, J.).

Plaintiff has failed to present any evidence of Kadam as the initial transferee or as an immediate or mediate transferee of such initial transferee of any of the Avoided Transfers. All the Avoided Transfers were made to Honey Creek as the initial transferee. [Doc. 95 at 38-39]. There is no evidence that Honey Creek was a mere conduit of the funds[6] or that it ever transferred the funds to Kadam. The evidence presented at Trial shows that Kadam had control over Honey Creek by way of his 99% ownership interest and as general partner in Honey Creek with Amscan as the other partner holding the remaining 1% ownership interest. Amscan is wholly owned by Kadam. Kadam's ownership interest in Honey Creek alone does not make him an initial transferee or an immediate or mediate transferee of such initial transferee without evidence of a transfer directly to Kadam and a showing of Kadam's actual control over the funds. There are no records displaying receipt of any funds by Kadam, only receipt of funds by Honey Creek. Thus, because Plaintiff has failed to present evidence that Kadam was the initial transferee or immediate or mediate transferee of such initial transferee of any of the Avoided Transfers, to the extent Plaintiff asserted a claim against Kadam under § 550, that claim fails.

### B. Alter Ego

As noted above, during closing arguments, counsel for Plaintiff asserted that Kadam was liable for the Avoided Transfers under an alter ego theory—which was not raised in the Amended Complaint or Pretrial Order. Therefore, the Court must consider whether the pleadings can be conformed to the evidence.

---

[6] "The mere conduit rule is used most frequently in situations where banks act as an intermediary in transferring assets." *IBT Int'l, Inc. v. Northern* (*In re International Admin. Servs., Inc*.), 408 F.3d 689, 705 (11th Cir. 2005).

Federal Rule of Civil Procedure 15(b), which applies to adversary proceedings through Federal Rule of Bankruptcy Procedure 7015, sets forth two standards for allowing the amendment of pleadings after trial. First, if "a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended … when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1). Second, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." *Id.* 15(b)(2). Here, Kadam did not object to any evidence as being outside the pleadings, such that the first standard does not apply.

Instead, the question is whether Plaintiff presented any evidence to support an alter ego theory vis a vis Kadam that would give rise to the issue being tried by express or implied consent under the second standard. Implied consent will not be found if the defendant will be prejudiced. *Cioffe v. Morris*, 676 F.2d 539, 542 (11th Cir. 1982). A defendant is prejudiced if either the defendant did not have notice of the new issue, the defendant could have offered additional evidence in defense of the issue, or if the defendant is denied a fair opportunity to defend against the plaintiff's new issue in some way. *Id.*

When, as here, a party objects to the amendment of pleadings at the close of trial, that party cannot be said to expressly consent to the amendment. *See Borden, Inc. v. Florida East Coast Ry. Co.*, 772. F2d 750, 758 (11th Cir. 1985). Therefore, the Court must consider whether Kadam gave implied consent to the amendment by "actually contesting [the] claim during the litigation." *Id.* Because the Court finds that Plaintiff did not provide evidence of an alter ego claim or otherwise raise the alter ego theory prior to the conclusion of the Trial, the Court finds no implied consent by Kadam to amend the pleadings to assert an alter ego claim against him.

The Court looks to Georgia law to determine the standard for stating an alter ego claim. *See In re Icarus Holdings, LLC*, 391 F.3d 1315, 1322 (11th Cir. 2004) (certifying to the Georgia Supreme Court the question of whether a chapter 11 debtor has standing to bring an alter ego claim against the debtor's principal); *RMS Titanic, Inc. v. Zaller*, 978 F. Supp.2d 1275, 1291 (N.D. Ga. 2013) (analyzed alter ego doctrine under Georgia law); *In re Mattress N More, Inc.*, 231 B.R. 104, 109 (Bankr. N.D. Ga. 1998) (same). Whether the Court may pierce the corporate veil and apply the alter ego theory is a factual question. *Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-00222-HLM, 2016 WL 9449794, at *8 (N.D. Ga. Sept. 12, 2016), *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017).

"Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused" in such a manner that observing the corporate form "'would work an injustice'" *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289, 612 S.E.2d 296, 299 (2005) (quoting *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306, 404 S.E.2d 607, 610 (1991)). To establish liability based on the alter ego doctrine, the plaintiff "'must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Id.* at 290, 612 S.E.2d at 299 (quoting *Heyde,* 199 Ga. App. at 306, 404 S.E.2d at 610). "The alter-ego doctrine rests on equitable principles and cannot be applied unless there is an inadequate remedy at law." *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp.3d 1303, 1329 (N.D. Ga. 2014) (*citing Baillie Lumber*, 279 Ga. at 290, 612 S.E.2d at 299).

The "Georgia Supreme Court has held that insolvency—'in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim'—is a 'precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim.'" *Id.*

9

(quoting *Johnson v. Lipton*, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985)). The alter ego theory applies "when there is such unity of interest and ownership that the separate personalities of the corporation and owners" does not exist. *Knieper*, 2016 WL 9449794 at *7 (*quoting Paul v. Destito*, 250 Ga. App. 631, 639, 550 S.E.2d 739, 747 (2001)). A plaintiff must show "that the corporate arrangement was a sham, used to defeat justice, to perpetuate fraud or to evade statutory, contractual or tort responsibility." *Id.* at *8 (*quoting Derbyshire v. United Builders Supplies, Inc.*, 194 Ga. App. 840, 844, 392 S.E.2d 37, 40 (1990)). Sole ownership of a corporation by one person "is not a factor and neither is the fact that the sole owner uses and controls it to promote his ends." *Id.* (quoting *Am. Cas. Co. of Reading, Pa. v. Schafer*, 204 Ga. App. 906, 908, 420 S.E.2d 820, 821-22 (1992)).

Plaintiff contends that Kadam was involved in all the transactions and in most cases, signed documents for both parties to the transactions, and that Kadam has been acting through Honey Creek to advance his own interests. Plaintiff emphasizes that Kadam's ownership of Honey Creek and control over its financial decisions supports a finding of Honey Creek as the alter ego of Kadam as he was creating a scheme of transactions to avoid creditors for his own benefit, by which he removed any liability Honey Creek had for Medcross while retaining control of Medcross and all the benefits of money earned by Medcross. Kadam attempted to remove any personal liability on debts incurred by Honey Creek by following corporate formalities such as by sending a letter from himself as general partner of Honey Creek to himself as operating manager of Medcross. Counsel for Kadam argued that there was no evidence of commingling of personal and corporate funds by Kadam or disregard of corporate formalities. Counsel for Kadam is correct.

The evidence at Trial included Kadam testifying that he exercised control over both Medcross and Honey Creek and the Court concluded that the most plausible reason for the Avoided

10

Transfers was for Honey Creek to recoup its investment in Medcross while not paying Medcross's creditors. This could lead one to conclude that equity and avoiding the defeat of justice require piercing the corporate veil and holding that Kadam was the alter ego of Honey Creek. However, the necessity for finding that Honey Creek was insolvent presents a problem with such a conclusion because there was no evidence whatsoever regarding Honey Creek's financial condition. *See Ralls Corp.*, 27 F. Supp.3d at 1329. Without a showing of Honey Creek's lack of assets to satisfy Plaintiff's claim, Plaintiff's argument that the veil should be pierced must fail.

Further, Plaintiff's argument for a finding of alter ego rests primarily on Kadam's signing on behalf of Medcross and Honey Creek, his 99% ownership interest in Honey Creek and his complete control over Honey Creek and Medcross. This alone is insufficient to pierce the corporate veil. As the court explained in *Knieper*, sole ownership of an entity by one individual is not enough to make a finding of alter ego even when the sole owner uses the entity and controls it "to promote his ends." *Knieper*, 2016 WL 9449794 at *8. Instead, Plaintiff needs to show evidence that Kadam abused the corporate form and "disregarded the separateness of legal entities" by commingling or confusing the separate corporate properties, records, or control. *Id.* (*quoting Schafer*, 204 Ga. App. at 908, 420 S.E.2d at 822). Such evidence often takes the form of commingling money, facilities, or records between two corporations who share the same employees and officers. Here, the only possible claims of commingling come from the transfer of equipment to Honey Creek that was then sold by Medcross with the proceeds kept in part by Medcross. Kadam testified that the equipment was sold back to Medcross prior to the sale of equipment to ImageLink although no documentation supported that claim. However, without evidence to show that these transactions resulted in or from some disregard of Honey Creek's corporate form, they do not give rise to a claim that Kadam is the alter ego of Honey Creek.

11

Although Plaintiff successfully displayed the fraudulent nature of the Avoided Transfers as discussed in the Memorandum Opinion, Plaintiff has failed to present evidence as to Kadam's abuse of the corporate form of Honey Creek or any disregard by Kadam of the separateness of the legal entities. Instead, Plaintiff has shown that Kadam took extra precautions to ensure that his personal actions were not confused with the actions of Honey Creek. For example, in each of the Avoided Transfers there is no evidence that Kadam received any money personally or that he was involved in any of the Transfers in a personal capacity. Rather, he was diligent in ensuring that all transactions were done in accordance with corporate formalities by acting in a representative capacity when conducting the transaction, signing in a representative capacity on any relevant documents, and ensuring all monetary transfers only went to accounts held by the legal entities, not his own. [See Pl. Exs. 75, 105, 107, 108, 109, 122, 124, 163].

In conclusion, the Court finds Plaintiff has presented insufficient evidence to support an alter ego claim such that piercing the corporate veil and holding Kadam personally liable for Honey Creek's actions is unwarranted.

Because there is no alter ego claim against Kadam in the Complaint, Plaintiff's only avenue to pursue the claim is via an amendment to conform the pleadings to the evidence as mentioned above. However, having failed to present sufficient evidence to sustain a claim for alter ego, Plaintiff's amendment to conform the pleadings to the evidence fails. 61A Am Jur 2d Pleading § 698.

For the foregoing reasons, it is

ORDERED that Plaintiff's request to amend the pleadings to conform to the evidence is DENIED. It is further,

12

ORDERED that Kadam is not a transferee under § 550 and these claims will be dismissed. It is further

ORDERED that the judgment entered on March 29, 2024, [Doc. 96] will be vacated as it failed to adjudicate claims against all defendants and a separate and complete judgment will be entered in accordance herewith and with the Memorandum Opinion [Doc. 95].

**END OF DOCUMENT**

## Distribution List

Jason L. Pettie, Chapter 7 Trustee for the
Estate of Medcross Imaging, LLC
Law Office of Jason L. Pettie, PC
P.O. Box 17936
Atlanta, GA 30316

Roy Amit Banerjee
KPPB LAW
One Lakeside Commons, Suite 800
990 Hammond Drive, NE
Atlanta, GA 30328

Gai Lynn McCarthy
Kumar, Prabhu, Patel & Banerjee
Suite 800, One Lakeside Commons
990 Hammond Drive
Atlanta, GA 30328

Medcross Imaging, LLC
4375 Johns Creek Parkway
Ste. 300
Johns Creek, GA 30024

Medcross Imaging, LLC
c/o Pankesh Kadam, Registered Agent
2609 Crest Valley Drive
Conyers, GA 30094

Pankesh Kadam
2609 Crest Valley Drive
Conyers, GA 30094

Mathew A. Schuh
Mathew A. Schuh, P.C.
Suite 1350, Two Midtown Plaza
1349 West Peachtree Street, NW
Atlanta, GA 30309

Amscan Radiology
c/o Pankesh Kadam, Registered Agent
2609 Crest Valley Drive
Conyers, GA 30094

David C. Whitridge
Whitridge Law, LLC
5207 Shirley Road
Gainesville, GA 30506

ALL PARTIES AND CREDITORS.

14